UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-488-RJC
(3:04-cr-271-RJC-7)

| | |
|---|---|
| NICHOLAS RAGIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** comes before the Court upon Petitioner's Motion to Vacate, pursuant to 28 U.S.C. § 2255, (Doc. No. 1); the Government's Response and Motion for Summary Judgment (Doc. Nos. 15, 17); Petitioner's Cross-Motion for Summary Judgment, (Doc. No. 21), and related pleadings. For the reasons that follow, the Government's motion will be granted in part, Petitioner's cross-motion will be denied, and Petitioner's § 2255 motion will be denied and dismissed.

I.     BACKGROUND

    A.    Procedural Background

Petitioner Nicholas Ragin and six others were named in a twenty-two count superseding indictment charging conspiracy to promote prostitution, as defined in 18 U.S.C. §§ 2422, 2423, 1952, in violation of 18 U.S.C. § 371 (Count 1) and conspiracy to possess with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 846 (Count 13). (Case No. 3:04-cr-271, Doc. No. 88: Superseding Indictment). Attorney Nikita V. Mackey was appointed to represent Ragin on October 21, 2004. (Id., Doc. No. 9: CJA 20).

1

Three co-defendants chose to plead guilty, while Ragin and three co-defendants pleaded not guilty and were tried jointly by a jury in April 2006. Following numerous days of testimony, the jury found Ragin guilty of both counts. (Id., Doc. No. 271: Verdict). Within three months of the verdict, Ragin wrote to the Court complaining about Mackey's representation and alleging that he fell asleep twice during trial. (Id., Doc. No. 298 at 2).

Ragin appeared with counsel for his sentencing hearing on January 18, 2007. The Court found that Ragin had a total offense level of forty and a criminal history category VI, based on his status as a career offender and sixteen criminal history points, resulting in a guideline range of 360 months to life imprisonment. (Id., Doc. No. 350: Statement of Reasons at 1). Mackey argued for a departure from the guideline range and the Government recommended a life sentence, but the Court sentenced Ragin to the low end of the advisory guideline range. (Id., Doc. No. 349: Judgment at 2).

Ragin appealed to the United States Court of Appeals for the Fourth Circuit on the ground that the sentence was erroneously imposed based on a mandatory crack guideline that violated his Fifth and Sixth Amendment rights. The appellate court found no error in the calculation of Ragin's sentence and his criminal judgment was affirmed in all respects. United States v. Howard, 309 F. App'x 760, 770-71 (4th Cir.), cert. denied, 558 U.S. 830 (2009).

Ragin timely filed the instant § 2255 motion claiming that counsel was ineffective for a number of reasons and that the Court erred in determining the sentence. (Doc. No. 1). In support of his motion, Ragin submitted a sworn affidavit claiming Mackey fell asleep twice during trial. (Doc. No. 7). The Government responded by opposing Ragin's motion to vacate and seeking summary judgment. (Doc. Nos. 15, 17). Ragin also sought summary judgment on his claims. (Doc. No. 21). The Court determined that an

evidentiary hearing was necessary to resolve Ragin's claim that his attorney provided ineffective assistance when he fell asleep during trial and appointed counsel to represent Ragin at that hearing. (Doc. No. 34: Order).

The first evidentiary hearing was held on May 12, 2014. Ragin called trial attorneys for two co-defendants and a juror as witnesses and testified himself. The Government called the case agent but was unable to subpoena Mackey. The Court held the evidentiary hearing open for the Government to secure Mackey's attendance and then heard his testimony on June 2, 2014. With the filing of post-hearing briefs, (Doc. Nos. 43, 44), this matter is ripe for disposition.

B. Factual Background

From the years of 2001 to 2004, Tracy and David Howard operated a prostitution ring and crack cocaine conspiracy in Charlotte, North Carolina. Their mother, Ila Howard, also organized a parallel prostitution service that utilized the same women and teenage girls and laundered illegal proceeds. Out of approximately forty witnesses who testified during the trial, six testified directly about Ragin's role in the conspiracies. The witnesses included Crystal Chumley, (Case No. 3:04-cr-271, Doc. No. 404: Trial Tr. at 1438-40), Catherine Wills, (Id., Doc. No. 405: Trial Tr. at 1614-15), Eugene Lewis, (Id., Doc. No. 407: Trial Tr. at 2080), Angentia Davis, (Id., Doc. No. 410: Trial Tr. at 2369), Keshia Burris, (Id., Doc. No. 411: Trial Tr. at 2626), and Special Agent Terry Tadeo, (Id., Doc. No. 412: Trial Tr. at 2863). Each of these witnesses testified that Ragin drove the prostitutes to their appointments. In addition, every witness except Davis testified that Ragin was the "enforcer" for the conspiracies, referencing Ragin beating up a woman or using firearms to defend the drug territory, or both. (Id., Doc. No. 404: Trial Tr. at 1451, 1456; Doc. No. 405: Trial Tr. at 1635; Doc. No. 407: Trial Tr. at 2080-83, 2094-95; Doc. No. 411: Trial Tr. at 2636-37). Chumley and Wills also testified about times

when they witnessed Ragin bagging drugs. (Id., Doc. No. 404: Trial Tr. at 1445-46, 1457; Doc. No. 405: Trial Tr. at 1652). Special Agent Tadeo testified about Ragin's admissions to him about driving the prostitutes to their appointments, using firearms to defend the drug territory, and receiving $100 to beat up a woman. (Id., Doc. No. 412: Trial Tr. at 2864-69).

During the direct examinations of these witnesses Mackey made several objections. During Chumley's direct examination Mackey objected when Chumley was asked why Ragin kept some of the money she earned while prostituting. (Id., Doc. No. 404: Trial Tr. at 1445). In addition, Mackey objected when Chumley was asked whether she was aware of an encounter between Ragin and Kelly Roland, and when Chumley testified that Ragin was bragging about beating her up. (Id. at 1451). During Lewis's direct examination, Mackey objected to Lewis identifying Ragin's handwriting on the grounds that he had not been qualified as an expert, (Case No. 3:04-cr-271, Doc. No. 407: Trial Tr. at 2108), and also objected to speculation when Lewis stated that Ragin was supposed to watch the girls, (Id. at 2121). During Burris's direct examination, Mackey objected to a question by the Government as being asked and answered, (Case No. 3:04-cr-271, Doc. No. 411: Trial Tr. at 2632), and also objected to the Government's attempt to introduce a letter allegedly written by Ragin, (Id. at 2633).

Mackey cross-examined all of the six witnesses whose testimony related to Ragin, (Case No. 3:04-cr-271, Doc. No. 404: Trial Tr. at 1528-29 (Chumley); Doc. No. 405: Trial Tr. at 1683-85 (Wills); Doc. No. 407: Trial Tr. at 2192-2212 (Lewis); Doc. No. 410: Trial Tr. at 2405-08 (Davis), Doc. No. 411: Trial Tr. at 2785-91, 2800-02 (Burris); Doc. No. 412: Trial Tr. at 2877-90 (Tadeo)), and during several of the cross-examinations he referenced the witness's prior testimony. For example, during the cross-examination of Special Agent Tadeo, Mackey referenced a letter asked about during the agent's direct testimony. (Id., Doc. No. 412: Trial Tr. at 2885). During Lewis's cross-examination, Mackey attempted to impeach his credibility by

4

referring to earlier conflicting statements Lewis made. (Id., Doc. No. 407: Trial Tr. at 2195). He also exposed Lewis's conflicting statements about his recollection of one of the shooting incidents involving Ragin. (Id. at 2207). During his cross-examination of Burris, Mackey referenced statements made by her during a previous cross-examination and direct testimony in which she admitted that she had lied about drugs in the past. Case No. 3:04-cr-271, Doc. No. 411: Trial Tr. at 2787).

At the first evidentiary hearing on the instant motion, Richard Culler, Tracy Howard's trial counsel, testified that he remembered one specific instance during the trial where Mackey had his head down on his arms and appeared to be sleeping but breathing regularly.[1] Culler stated that he remembered a conversation with Peter Adolf, David Howard's trial counsel, in which he observed that Mackey was asleep "again," but he could not specifically recall any other instance of apparent sleeping. He also could not recall what was going on in the trial during that time and whether court was in session.

Similarly, Adolf recalled one specific instance during the trial in which Mackey was silent and looked as if he was asleep. Adolf stated that the Assistant United States Attorney was showing defense counsel a document and Mackey did not respond until the Court called out his name. Adolf could not remember who was testifying at the time or the nature of the document. He confirmed that dozens of witnesses testified during the three week trial, but not every witness testified about each of the four co-defendants on trial.

One of the jurors, Pamela Vernon, stated that she observed Mackey with his head in his hands propped up on the table, not seeming alert. Vernon testified that she observed this type of behavior from Mackey frequently and that other jurors commented on it in the jury room.

---

[1] A transcript of the hearing has not been filed.

However, she admitted that she could not say for certain that Mackey was asleep when she observed him with his head in his hands.

Ragin testified at the hearing and expanded his allegation from Mackey sleeping two times to sleeping ten to fifteen times during the trial. He presented a trial transcript marked with the places Mackey slept. He stated he heard Mackey snoring with his eyes closed sometimes and that he had to nudge Mackey to wake him up. During cross-examination, Ragin acknowledged that he had previously only alleged two instances of sleeping in his post-trial letter to the Court and in his § 2255 motion. He explained that he did not recall the other incidents until he reviewed the trial transcript.

Special Agent Tadeo testified about one or two instances in which Mackey briefly had his eyes closed, but was not outright sleeping. He could not remember which day or during which witness that behavior occurred. He did remember seeing Mackey preparing for cross-examination of witnesses. Special Agent Tadeo recalled that during his own testimony Mackey was alert and his cross-examination was "aggressive."

Mackey testified at the second evidentiary hearing. He stated that he did not recall falling asleep during trial and that he would have remembered something like that if it had happened. In addition, he testified that he believed the Court would have admonished him had he been asleep and that the record would reflect him sleeping if that had been the case. He stated that he had difficulty recalling particular details from the trial as a result of the time that had passed since then.

II.  STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief.

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to a motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, when the record taken as a whole could not lead a trier of fact to find for the non-moving party, granting summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). The Court has considered the record in this matter and applicable authority and concludes that claims other than counsel's alleged sleeping can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970) (affirming summary disposition where files and records conclusively show that petitioner is entitled to no relief).

III. DISCUSSION

    A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall have the right to the effective assistance of counsel for his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

7

To demonstrate prejudice, a petitioner "must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Murray v. Carrier, 477 U.S. 478 (1986) (emphasis omitted) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Under these circumstances, a petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If a petitioner falls short of meeting his burden here, then "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the performance prong, the Court must not grant relief solely because a petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

1. Failure to Provide Discovery

Ragin first contends that Mackey was deficient in failing to provide him with timely and complete discovery. Consequently, he argues that if he had known about certain witness statements before trial, then he would have accepted the Government's plea offer. In his § 2255 motion, Ragin does not identify which witnesses offered surprising or damaging testimony. In response to the Government's motion for summary judgment, Ragin argues vaguely that the testimony of Keisha Burris and Eugene Lewis could have been impeached if counsel had provided him with discovery from the Government. (Doc. No. 23 at 3).

It is Ragin's burden to demonstrate both deficient performance and prejudice. Ragin provides no facts to impeach these witnesses and fails to show how the outcome of his trial

8

would have been affected. To the extent that discovery was provided on the eve of or during trial, Mackey was not responsible for the Government providing additional discovery during the course of the trial. (Doc. No. 15: Response at 18). Ragin has not shown that any ongoing disclosure caused him prejudice.[2]

Ragin contends that he would have elected to plead guilty and would have faced a lesser sentence if his attorney had informed him of the nature of the Government's evidence. This assertion is belied by the record. The Government filed an unsigned plea agreement in this case which provides that Ragin would plead guilty to Counts 1 and 13 and be held responsible for at least 50 grams of cocaine base, which would have triggered the same penalty as the jury verdict under 21 U.S.C. § 841(b)(1)(A) of ten years to life. (Compare Doc. No. 16: Plea Agreement at 1-2 with Case No. 3:04-cr-271, Doc. No. 271: Verdict at 1-2). Thus, even if he had accepted the plea agreement and received a three-level reduction for acceptance of responsibility, his total offense level would have been 37, but the advisory guideline range would have remained of 360 months to life, given a criminal history category of VI.[3] Therefore, the Court finds that the record clearly shows Ragin is not entitled to relief on this claim.

---

[2] Petitioner also argues that his counsel failed to properly investigate potentially favorable witnesses for the defense. Other than claiming that the witnesses "could have made a critical impact on the government's case," (Doc. No. 1: Motion at 3), Petitioner fails to alert this Court to how these witnesses may have assisted him. The blanket assertion that they may have been helpful is wholly conclusory and fails to rebut the presumption of competency.

[3] Although Petitioner claims counsel failed to inform him of the plea agreement, (Doc. No. 1: Motion at 2), the record shows clearly that he did. On March 6, 2006, approximately one month before the trial, counsel informed a magistrate judge that he and Petitioner discussed its terms and the Government confirmed it was still available to be accepted. (3:04-cr-271, Doc. No. 487: Hr'g Tr. at 8-9). Petitioner did not respond when counsel informed the magistrate judge that Petitioner "adamantly" rejected the offer. (Id.). Therefore, this claim is without merit.

2. Failure to Review PSR and Address Criminal History

Ragin next argues that Mackey was ineffective in failing to properly discuss his presentence report (PSR) with him and in failing to properly investigate and challenge his criminal history points. (Doc. No. 1 at 2). During his sentencing hearing, Ragin claimed that counsel "didn't really go over" the PSR until the night before. (Case No. 3:04-cr-271, Doc. No. 391: Sent. Hr'g Tr. at 3). Mackey clarified that Ragin was referring to the second revised PSR, issued that week, with no change to the advisory guideline range. (Id.). Mackey further stated that he had previously provided a copy of the draft PSR and discussed it with Ragin. (Id.). Following Mackey's presentation of objections to the PSR, the Court gave Ragin the opportunity to present any other objections, but he declined and stated that counsel had covered "just about everything." (Id.).

Similarly, Ragin states Mackey failed to investigate his criminal history properly, which would have avoided his career offender designation. (Doc. No. 1 at 2). The record shows that counsel challenged the prior convictions at sentencing, (Case No. 3:04-cr-271, Doc. No. 391: Sent. Hr'g Tr. at 17), and Ragin has not provided any evidence that should have been uncovered by Mackey to alter the Court's conclusion.[4] Therefore, Ragin is not entitled to a hearing on this claim.

3. Defendant's Right to Testify

Ragin contends that Mackey refused to permit him to testify in his own defense and that counsel was unprepared to conduct his direct examination. (Doc. No. 1 at 2). However, after the close of the Government's evidence, the Court addressed Ragin directly about his right to testify or not. (Case No. 3:04-cr-271, Doc. No. 412: Trial Tr. at 121). Ragin initially indicated that he

---

[4] Because Petitioner was found to be a career offender, (Case No. 3:04-cr-271, Doc. No. 519: PSR at 17), his arguments about criminal history points for reckless driving, resisting, escape, and larceny are moot because they did not affect that determination.

would testify, (Id. at 122); however, counsel later informed the Court that he would not present any evidence, (Case No. 3:04-cr-271, Doc. No. 413: Trial Tr. at 325). Although Ragin asserts that Mackey was unprepared and did not allow him to testify, the record clearly shows that Ragin understood that it was his decision whether or not to testify. Therefore, Ragin is not entitled to relief on this claim of ineffective assistance of counsel.

4. Mistrial

Ragin claims Mackey deliberately elicited a statement of a non-testifying co-defendant from the case agent to cause a mistrial because he believed that Ragin would be convicted. (Doc. No. 1 at 2). Although counsel did improperly seek to impeach the agent with Ragin's out-of-court statement about Tracy Howard, Ragin has asserted no facts to show how such performance prejudiced him. Therefore, he is not entitled to a hearing on this claim.

5. Failure to Introduce Impeachment Evidence

Next, Ragin argues that Mackey was ineffective by failing to impeach Keisha Burris regarding her testimony against Ragin at trial. Ragin has failed to show what damaging information was available to counsel and that his performance fell below an objective standard of reasonableness. Therefore, this claim is without merit.

6. Asleep During Trial

Ragin contends that Mackey fell asleep during the trial and that he had to touch him to awaken him when it was his opportunity to cross-examine a witness. (Doc. No. 1 at 3). Some courts have found a presumption of prejudice applies where counsel's sleeping at trial was so extensive as to effectively result in the denial of counsel for the defendant. Burdine v. Johnson, 262 F.3d 336 (5th Cir. 2001) (presumption of prejudice limited to "egregious" facts of case where attorney was repeatedly unconscious during guilt-innocence phase of capital murder trial). However, courts have only applied the presumption of prejudice when the evidence shows

counsel slept through a "substantial portion" of the defendant's trial. Muniz v. Smith, 647 F.3d 619, 623 (6th Cir. 2011) (collecting cases from the Ninth, Fifth, and Second Circuits holding denial of counsel with presumed prejudice only occurs if counsel sleeps through a "substantial portion" of trial).

In Muniz, the appellate court examined the allegation that the defense counsel was asleep when the Government cross-examined his client, who was on trial for assault with intent to commit murder. 647 F.3d at 621, 624. The allegation was supported by an affidavit from a juror. Id. In evaluating the defendant's ineffective assistance of counsel claim, the Sixth Circuit held that a presumption of prejudice did not apply because the defendant could not show that his trial counsel was asleep for a "substantial portion" of his trial. Id. at 624. Applying the Strickland standard, the court held that the defendant could not establish prejudice because he could not show that the alleged deficient performance would have affected the outcome of the trial, as the evidence against him was overwhelming. Id. at 625.

The Court finds that Ragin's testimony during the evidentiary hearing and his exhibit listing ten to fifteen times during the trial that Mackey was asleep are not credible. His earliest accusation, made within three months of the trial, was of only two instances. (Case No. 3:04-cr-271, Doc. No. 298). That limited claim was repeated in his affidavit in support of the instant motion. (Doc. No. 7 at 4). Defense attorneys Culler and Adolf, along with Special Agent Tadeo, testified at the evidentiary hearing consistently with Ragin's initial allegations of only one or two occasions where Mackey appeared to be asleep during the trial. The trial transcript shows Mackey's attention to the testimony of several witnesses Ragin listed as affected by the alleged sleeping. Ragin has great incentive to embellish his claim at this stage in the proceedings and the juror, who repeatedly referred to Ragin by his first name during her testimony, may be

12

remorseful for the severity of the sentence imposed.[5] It is telling that neither Ragin nor the juror brought Mackey's alleged sleeping to the attention of the Court during the trial when it could have been effectively addressed if it were occurring so frequently. Therefore, the Court finds that Mackey was not asleep for "substantial portions" of the trial. Even if Mackey fell asleep once or twice during the protracted trial involving over forty witnesses, the transcript reflects his attention to the six witnesses who directly implicated Ragin. Thus, the Court will apply the usual Strickland standard and not presume prejudice in this case.[6]

Ragin has not shown that Mackey's behavior actually prejudiced the outcome of the trial. The Court finds, after a careful review of the trial transcript, that most of the witnesses at trial did not know Ragin and did not mention him in their testimony, during which other trial counsel lodged objections adequate to protect Ragin as an alleged conspirator with their clients.[7] As detailed above, the transcript reflects that Mackey made timely objections during the direct examinations of the six witnesses that did implicate him and also cross-examined each of those witnesses.[8] Their testimony was consistent with Ragin's own admission that he aided the

---

[5] Even so, the juror affirmed at the evidentiary hearing that she had followed the Court's instructions and rendered a verdict based on the facts in evidence.

[6] Even if a presumption of prejudice applied, the Court would find that the weight of the evidence against Ragin would overcome that prejudice.

[7] For example, counsel for Tracy Howard objected to the introduction of a graphic photograph of Kelly Roland's injuries, which the Court sustained on Fed. R. Evid. 403 grounds. (Case No. 3:04-cr-271, Doc. No. 407: Trial Tr. at 2083-84).

[8] Ragin argues that there were three instances during Catherine Wills's direct testimony in which a competent attorney would have objected if he were not asleep. (Doc. No. 43: Memorandum at 5). In the first instance, Wills guessed that Ragin's purpose in living with her in an apartment was to keep watch over her. (Case No. 3:04cr271, Doc. No. 405: Trial Tr. at 1618). Given the ample other evidence of Ragin's role in prostitution, this claim is without merit. In the second instance, Wills speculated that Ragin beat up a woman named Kelly because he bragged about it. (Id. at 1635). There, Tracy Howard's defense attorney objected and the Court instructed the jury to disregard the statement, so there was no need for Mackey to object. In the third

prostitution and drug conspiracies by driving prostitutes to clients and using violence to defend drug territory, as well as beating up a woman.[9]  In light of the substantial evidence against him, Ragin has not demonstrated a reasonable probability of a different outcome if Mackey had not been ineffective as alleged in this claim.  Additionally, the Court will not grant relief based on counsel's performance because the result of the trial was not fundamentally unfair or unreliable. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

       7.       Transfer of Evidence to Appellate Counsel

Ragin contends that his Mackey did not provide important evidence to his appellate counsel, including letters written to Ragin by a key Government witness, which made his appeal "below average." (Doc. No. 1 at 3).  Ragin has not identified the witness at issue, the information contained in the letters, or how the outcome of the appeal would have been different.  Therefore, he is not entitled to a hearing on this claim.

       8.       Failure to Investigate Witnesses

Ragin argues that Mackey failed to investigate witnesses supplied by him for his defense. (Id. at 3).  He lists three witnesses, one who allegedly lied for the Government and two who potentially could have provided an alibi during the time of the conspiracy. (Doc. No. 23: Response at 5-6).  Ragin has not asserted facts to show the substance of the lie or alibi testimony.

---

instance, Wills guessed that the drugs she saw Ragin sell were Tracy Howard's. (Id. at 1651). The form of her answer was not objectionable as to Ragin, and Tracy Howard's counsel objected to the speculation about his client's role in Ragin's observed drug dealing.

[9] Ragin also argues that Mackey was asleep during Special Agent Tadeo's testimony about his confession. (Doc. No. 43: Memorandum at 5).  The fact that Mackey misstated agent's testimony on direct does not establish that he was asleep during that portion of the trial.  The nature of the misstatement involved Ragin's implication of Tracy Howard, which was part of the agent's report, but the Court had excluded under Bruton v. United States, 391 U.S. 123 (1968). (Case No. 3:04-cr-271, Doc. No. 412: Trial Tr. at 2878-81).  Rather, Special Agent Tadeo testified at the evidentiary hearing that Mackey was alert during his testimony and that his cross-examination was "aggressive."  Therefore, Ragin has not shown a reasonable probability of a different outcome for him based on this performance.

14

Therefore, he has not provided any basis to conclude that counsel's performance worked to his actual and substantial disadvantage and is not entitled to relief on this claim.

        9.      Conflict of Interest

Finally, Ragin claims Mackey was ineffective because of conflict of interest before and during trial when he sought election as a judge and during appeal when he sought election as county sheriff. (Doc. No. 1 at 3). In order to establish a claim under Strickland based on an actual conflict of interest, a petitioner "must show that his interests diverged with respect to a material factual or legal issue or to a course of action." United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007). In short, a petitioner must demonstrate that there was a conflict and this conflict operated to adversely impact his counsel's performance. Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). Yet, Ragin points to no facts showing that Mackey's decisions or conduct were affected by his political ambitions. Therefore, he is not entitled to a hearing on this claim.

        B.      Apprendi Error

Next, Ragin argues that the district court erred by sentencing him based on an amount of drugs that was greater than that found by the jury. The jury found that more than fifty grams of cocaine base was reasonably foreseeable to the Ragin. (3:04-cr-271, Doc. 271: Verdict at 2). The statutory penalty for that drug quantity at the time Ragin committed the offense and was sentenced was ten years to life. 21 U.S.C. § 841(b)(1)(A) (2007). The Court sentenced him to thirty years, within the statutory range of punishment based on the jury's verdict. (Case No. 3:04-cr-271, Doc. No. 349: Judgment at 2). Therefore, the record clearly shows that the Court did not violate the rule in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt.").

**IV.    CONCLUSION**

After reviewing the entire record in the light most favorable to Petitioner, the Court finds no genuine issues of material fact such that a rational trier of fact could find that Petitioner is entitled to relief on any of his claims other than counsel's alleged sleeping. On that claim, after a hearing, the Court finds that Petitioner has not established any prejudice from the alleged sleeping.

**IT IS, THEREFORE, ORDERED** that:

1. The Government's Motion for Summary Judgment, (Doc. No. 17), is **GRANTED in part**;

2. Petitioner's Cross-Motion for Summary Judgment, (Doc. No. 21), is **DENIED**;

3. Petitioner's Motion to Vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**; and

4. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court **DECLINES** to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong). Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: August 19, 2014

Robert J. Conrad, Jr.
United States District Judge